Steven A. Zalesin (Admitted *Pro Hac Vice*)
sazalesin@pbwt.com
Catherine A. Williams (Admitted *Pro Hac Vice*)
cawilliams@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone (212) 336-2110
Facsimile (212) 336-2111

Tammy B. Webb (SBN 227593)
tbwebb@shb.com
SHOOK, HARDY & BACON LLP
One Montgomery St., Suite 2700
San Francisco, California 94104
Telephone (415) 544-1900
Facsimile (415) 391-0281

*Attorneys for Defendant The Coca-Cola Company*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SHANA BECERRA, individually and on behalf of a class of similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> THE COCA-COLA COMPANY, <br><br> Defendant. | CASE NO. 17-cv-05916-WHA <br><br> **DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br> Date: February 22, 2018 <br> Time: 8 a.m. <br> Judge: Hon. William Haskell Alsup |

# TABLE OF CONTENTS

                                                                        **Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.     Plaintiff's Claims Are Expressly Preempted ................................................................2

          A.    Diet Coke's Brand Name Is Authorized by Section 343(r)(2)(D), Which Imposes Specific Requirements for Use of the Word "Diet" ................................2

          B.    Plaintiff Cannot Use the "False or Misleading" Proviso in Section 343(r)(2)(D) to Escape Preemption ..........................................................................3

          C.    Plaintiff's Claims Are No Different From Others That Have Been Held Preempted ..........................................................................................................4

          D.    Coca-Cola's Interpretation Does Not Render Section 343(r)(2)(D)'s Cross-Reference to Section 343(a) Superfluous .................................................8

          E.    Neither the "Presumption Against Preemption" Nor the Parallel Requirements of the Sherman Law Can Save Plaintiff's Claims ........................10

    II.    Plaintiff's Claims Are Barred by California's Safe Harbor Doctrine ..............................12

    III.   Plaintiff Has Not Stated A Claim for Breach of the Implied Warranty of Merchantability ..........................................................................................................12

CONCLUSION ..............................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Backus v. ConAgra Foods, Inc.*,
   2016 U.S. Dist. LEXIS 92355 (N.D. Cal. July 15, 2016) ................................................. 4, 6, 9

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   475 F. App'x 113 (9th Cir. 2012) ................................................................................. 4, 6

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999) ................................................................................................. 12

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) .......................................................................... 11

*Coe v. Gen. Mills*,
   2016 U.S. Dist. LEXIS 105769 (N.D. Cal. Aug. 10, 2016) ............................................... 4

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ............................................................................................. 7

*Fagan v. Neutrogena Corp.*,
   2014 U.S. Dist. LEXIS 2795 (C.D. Cal. Jan. 8, 2014) ...................................................... 7

*Gustavson v. Wrigley Sales Co.*,
   2014 U.S. Dist. LEXIS 1693 (N.D. Cal. Jan. 7, 2014) ...................................................... 7

*Guttmann v. Nissin Foods, Inc.*,
   2015 U.S. Dist. LEXIS 108217 (N.D. Cal. Aug. 14, 2015) ............................................. 12

*Guttmann v. Nissin Foods, Inc.*,
   2015 U.S. Dist. LEXIS 92756 (N.D. Cal. July 15, 2015) ........................................ 5, 9, 11

*Marcus v. Apple, Inc.*,
   2015 U.S. Dist. LEXIS 2140 (N.D. Cal. Jan. 8, 2015) .................................................... 13

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
   2017 U.S. Dist. LEXIS 174394 (C. D. Cal. Oct. 10, 2017) ............................................. 11

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
   136 S. Ct. 1938 (2016) ....................................................................................................... 1

*Red v. Kroger Co.*,
   2010 U.S. Dist. LEXIS 115238 (C.D. Cal. Sept. 2, 2010) ............................................. 4, 6

*Samet v. P&G*,
 2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013) ..............................................11

*Yeldo v. MusclePharm Corp.*,
 2017 U.S. Dist. LEXIS 189605 (E.D. Mich. Nov. 16, 2017) ...........................................7

*Yumul v. Smart Balance, Inc.*,
 2011 U.S. Dist. LEXIS 109952 (C.D. Cal. Mar. 14, 2011) ..............................................6

*Zeisel v. Diamond Foods, Inc.*,
 2010 U.S. Dist. LEXIS 141941 (N.D. Cal. Sept. 3, 2010) ...............................................7

*Zupnik v. Tropicana Products*,
 2010 U.S. Dist. LEXIS 142060 (C.D. Cal. Feb. 1, 2010) ................................................7

**Statutes**

21 U.S.C. § 343(a) ............................................................................................................ *passim*

21 U.S.C. § 343-1(a) ................................................................................................................2, 3, 10

21 U.S.C. § 343(r) ............................................................................................................. *passim*

Federal Food, Drug and Cosmetic Act ("FDCA"),
 21 U.S.C. §§ 301 *et seq*. ................................................................................................ *passim*

Sherman Food, Drug and Cosmetic Law,
 Cal. Health & Safety Code §§ 109875 *et seq.* ............................................................... *passim*

**Regulations**

21 C.F.R. § 1.21(a) .......................................................................................................................7

21 C.F.R. § 100.1(c)(4) ............................................................................................................3, 11

21 C.F.R. § 101.3(e)(2)(ii) ............................................................................................................9

21 C.F.R. § 101.13 ........................................................................................................... *passim*

21 C.F.R. § 101.61(c)(3) ...............................................................................................................9

21 C.F.R. § 105.66 (1978) ............................................................................................................3

21 C.F.R. § 105.66 ..............................................................................................................2, 3, 5

21 C.F.R. § 133.190 ......................................................................................................................9

**Other Authorities**

136 Cong. Rec. H5836-01 (July 30, 1990) ................................................................................10

## PRELIMINARY STATEMENT

Section 343(r)(2)(D) of the FDCA and its corresponding regulations enumerate detailed requirements for use of the term "diet" on soft drinks marketed prior to October 25, 1989. These requirements have preemptive force, and Diet Coke satisfies every one of them.

Plaintiff argues that her claims can nevertheless proceed because Section 343(r)(2)(D) actually imposes just one requirement—that use of the term "diet" not be "false or misleading." As Plaintiff sees it, Section 343(r)(2)(D) means that Section 343(r)'s limitations on nutrient content claims "do[] not apply" to Diet Coke *at all*. "Instead," Plaintiff argues, Diet Coke is subject to Section 343(a)'s prohibition on "false or misleading" label statements, and to that general restriction "*only*." (Pl. Opp. 6-7) (emphasis in original) On this premise, Plaintiff asserts that her claims are not preempted, because "false or misleading" food-labeling claims may be challenged under state law ***unless*** they are addressed by preemptive provisions of the FDCA, such as Section 343(r), and Plaintiff's claims supposedly are not.

This is sophistry. Diet Coke is not subject "only" to Section 343(a)'s general prohibition on false or misleading labels; it is subject also to the specific requirements of Section 343(r)(2)(D). The latter section falls within the FDCA's express-preemption provision, which forbids use of state law to impose any requirement that is "not identical" to federal requirements. Plaintiff's complaint seeks to ban Diet Coke's iconic brand name on the basis that the product purportedly is not "useful in promoting weight loss or healthy weight management" (Pl. Opp. 1)—a requirement that appears nowhere in the FDCA and is not "identical" to those of Section 343(r). As numerous courts including this one have held, the mere fact that Diet Coke is (like every other food) also subject to Section 343(a)'s "false or misleading" catch-all does not create an end run around the FDCA's express preemption scheme. Plaintiff's claims are preempted and should be dismissed.

**ARGUMENT**

**I. Plaintiff's Claims Are Expressly Preempted**

**A. Diet Coke's Brand Name Is Authorized by Section 343(r)(2)(D), Which Imposes Specific Requirements for Use of the Word "Diet"**

As set forth in Coca-Cola's opening brief, Section 343(r)(2)(D) of the FDCA explicitly provides that a "diet" claim on a soft drink is permissible where certain enumerated requirements are met. Specifically, the term can be used

> if (i) such claim is contained in the brand name of [a] soft drink, (ii) such brand name was in use on such soft drink before October 25, 1989, and (iii) the use of the term "diet" was in conformity with section 105.66 of title 21 of the Code of Federal Regulations.

21 U.S.C. § 343(r)(2)(D); *see also* 21 C.F.R. § 101.13(q)(2) (similarly providing that a soft drink satisfying these criteria "may continue to use that term as part of its brand name"). Section 343(r)(2)(D) and its implementing regulations have preemptive effect. *See* 21 U.S.C. § 343-1(a)(5).

There is no dispute that "diet" in Diet Coke satisfies all three requirements quoted above: it appears in the brand name of a soft drink; it was in use prior to October 25, 1989; and its use prior to that date was in conformity with 21 C.F.R. § 105.66. The statute's requirements are met, and they have preemptive force. The case for preemption could hardly be more open-and-shut.

Plaintiff, however, seizes upon the fact that Section 343(r)(2)(D) is drafted in the negative. The provision literally states that Section 343(r)'s restrictive scheme, which generally governs the use of "nutrient content" claims, "does not apply to a claim" that satisfies the three criteria delineated in Section 343(r)(2)(D). To the extent it contains affirmative language, Plaintiff notes, Section 343(r)(2)(D) states only that "[s]uch a claim is subject to paragraph (a)"—the general prohibition on false or misleading label statements. Plaintiff thus concludes that soft drinks such as Diet Coke that fall within Section 343(r)(2)(D) are subject "*only* to § 343(a)'s prohibition on 'false and misleading' labels . . . ." (Pl. Opp. 7) (emphasis in original).

The problem with this argument is self-evident. While it is true that Section 343(r)(2)(D) states that the general restrictions of Section 343(r) do "not apply" to the word "diet" in certain

circumstances, it goes on to specify *what those circumstances are* and *when the term's use is authorized*. In other words, Section 343(r)(2)(D) replaces the statutory scheme set forth elsewhere in Section 343(r) with a different set of requirements applicable to soft drinks marketed prior to October 1989. The statute authorizes use of the term "diet" on a soft drink label where (1) "diet" is part of the brand name; (2) the brand name was in use prior to October 1989; and (3) such use conformed to Section 105.66. As of that time, Section 105.66 defined "diet" as "low calorie or reduced calorie"—a definition that, as it happens, remains in effect today. *See* 21 C.F.R. § 105.66(e) (1978); § 105.66(e).

Plaintiff cannot evade the preemptive effect of Section 343(r) by pretending Section 343(r)(2)(D) is merely a statutory "carve-out" that imposes no requirements of its own. Section 343(r)(2)(D) imposes multiple requirements, including that an eligible soft drink be a "low or reduced calorie" food. That is not a free pass. It is the same requirement that applies to a "diet" soft drink introduced to the market today. *See* 21 C.F.R. § 101.13(q)(2) (permitting use of "diet" on post-1989 soft drinks that satisfy the definition set forth in current Section 105.66(e)); 21 C.F.R. § 105.66(e) (defining "diet" as "low calorie" or "reduced calorie").

In short, Plaintiff's core premise that Section 343(r) "does not apply" to Diet Coke, and that Diet Coke is subject "only" to Section 343(a)'s general prohibition on false or misleading statements, is a fallacy.

### B. Plaintiff Cannot Use the "False or Misleading" Proviso in Section 343(r)(2)(D) to Escape Preemption

The express-preemption provision of the FDCA prohibits all state food-labeling requirements that are "not identical to" those set forth in certain sections of the statute, including Section 343(r), and in regulations that implement those statutory provisions. *See* 21 U.S.C. § 343-1(a)(5); *see also* 21 C.F.R. § 100.1(c)(4) (extending preemptive force to FDA regulations). As detailed in Coca-Cola's opening brief and as Plaintiff does not fundamentally dispute, these express-preemption provisions are not rendered impotent by the statute's separate inclusion of a general prohibition of food-labeling claims that are "false or misleading." Were it otherwise, the express-preemption

provision would be virtually meaningless: a state-law plaintiff can always allege that a food label is "false or misleading," its compliance with specific directives of the FDCA notwithstanding.

For this reason, numerous courts have held that Section 343(a)'s prohibition of "false or misleading" label statements cannot be used to circumvent the preemptive effect of Section 343(r) and its implementing regulations. To the contrary, because "[Section] 343(r) and accompanying regulations describe, in detail, nutrient content claims that *are permitted* under federal law, [such claims], by definition, are not considered 'false or misleading' under federal law." *Red v. Kroger Co.*, 2010 U.S. Dist. LEXIS 115238, at *13-15 (C.D. Cal. Sept. 2, 2010) (emphasis in original); *Coe v. Gen. Mills*, 2016 U.S. Dist. LEXIS 105769, at *11 (N.D. Cal. Aug. 10, 2016) ("[A] statement cannot be 'false or misleading' under Section 343(a) where the challenged conduct is expressly . . . permitted by FDA regulations") (internal quotation marks omitted). Allowing authorized label statements to be challenged on these grounds would "impose a burden through state law that is not identical to the requirements under Section 343(r)"—exactly what the FDCA's express-preemption provision prohibits. *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012); *see also Backus v. ConAgra Foods, Inc.*, 2016 U.S. Dist. LEXIS 92355, at *12-13 (N.D. Cal. July 15, 2016) (Alsup, *J.*) (claim that label statement was "deceptively misleading," despite being "compliant with [applicable regulations]" promulgated under Section 343(r), was preempted).

This principle dooms Plaintiff's case. Section 343(r)(2)(D) "describe[s] in detail" when the precise claim at issue in this action ("diet") can be used. *Red*, 2010 U.S. Dist. LEXIS 115238, at *15. Plaintiff seeks to impose an additional condition, limiting use of the claim to products that, in her view, contribute to weight loss or management. That requirement is outside the statute, and would "impose a burden through state law that is not identical to the requirements under Section 343(r)." *Carrea*, 475 F. App'x at 115. It is therefore preempted.

### C. Plaintiff's Claims Are No Different From Others That Have Been Held Preempted

Plaintiff offers but two theories as to why her case supposedly departs from these textbook precedents, and neither of them has merit. *First*, as noted above, Plaintiff argues that Diet Coke's

brand name is "subject *only* to § 343(a)'s prohibition on 'false [or] misleading' labels," and not to any of the statute's preemptive provisions. (Pl. Opp. 7) (emphasis in original) For the reasons already explained, that is simply not true. The word "diet" in Diet Coke is subject to the detailed requirements of Section 343(r)(2)(D), including that "diet" was used in a soft drink's brand name prior to October 1989 and that such use was in conformity with 21 C.F.R. § 105.66. Section 343(r)(2)(D) is indisputably part of Section 343(r), and Section 343(r) has preemptive force. That is the end of Plaintiff's first (and primary) argument.

*Second*, Plaintiff asserts that Section 343(r)(2)(D)'s explicit cross-reference to Section 343(a) (and a similar cross-reference in corresponding regulations) means that Congress intended those provisions to have no preemptive force, and to permit state-law attacks on the term "diet" whenever its use is alleged to be "false or misleading." That theory, too, has been rejected, by this Court and others, in the context of FDCA provisions that are directly analogous to the one at hand.

In *Guttmann v. Nissin Foods, Inc.*, 2015 U.S. Dist. LEXIS 92756, at *7-8 (N.D. Cal. July 15, 2015) (Alsup, *J.*), the plaintiff challenged a "0g Trans Fat" claim on a product that contained a small amount of trans fat. Because it is a nutrient-content claim, "0g Trans Fat" is, like the word "diet," governed by Section 343(r) and its implementing regulations. Just as here, the pronouncement in question included a "false or misleading" proviso:

> The label or labeling of a product may contain a statement about the amount or percentage of a nutrient if . . . [t]he statement does not in any way implicitly characterize the level of the nutrient in the food ***and it is not false or misleading in any respect*** (e.g., '100 calories').

21 C.F.R. § 101.13(i)(3) (emphasis added). A separate regulation provided that, on a product's nutrition facts panel, an amount of trans fat less than 0.5 grams per serving was to be "expressed as zero." *See Guttmann*, 2015 U.S. Dist. LEXIS 92756, at *4 (citing 21 C.F.R. § 101.9(c)(2)(ii)). The product in question met the specific requirements of both regulations. The plaintiff nevertheless argued that the "0g Trans Fat" claim was "false or misleading," and therefore actionable under state law.

This Court dismissed the plaintiff's claims as expressly preempted. It noted that "[t]o permit

5 DEFENDANT'S REPLY MEMORANDUM
ISO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

state-law claims based on a '0g Trans Fat' nutrient-content claim while the FDA required trans-fat to be declared as zero in the nutrition-facts panel would . . . impose a burden relating to product labeling not identical to the requirements of federal law." *Id.* at \*8 (citing *Carrea*, 475 F. App'x at 115). The "false or misleading" proviso in the implementing regulations did not allow a state-law plaintiff to circumvent the preemptive effect of the FDCA requirements that specifically authorized the claim.

Likewise, in *Backus*, this Court again made clear that a reference to "false or misleading" claims in the governing regulation is no more an end run around the provision's preemptive force than is Section 343(a) itself. 2016 U.S. Dist. LEXIS 92355, at \*12-14. There, the plaintiff challenged labeling claims that a food contained, among other things, "70% Less Saturated Fat" than similar products and "0g of Trans Fat." Both were nutrient-content claims subject to Section 343(r) and its corresponding regulations. The first was governed by 21 C.F.R. § 101.13(j), which imposes discrete requirements for "relative" nutrient-content claims, but does not reference the general prohibition on "false or misleading" claims. The second was governed by 21 C.F.R. § 101.13(i)(3), which, as noted above, does include such a reference. The Court reached the same conclusion as to both claims, holding that both were expressly preempted. 2016 U.S. Dist. LEXIS at \*12-14.

These cases stand squarely for the proposition that a general reference to the "false or misleading" prohibition of Section 343(a) does not give state-law plaintiffs license to circumvent the preemptive effect of other, more specific FDCA provisions, regardless of whether the provision contains a "false or misleading" cross-reference. *Accord Carrea*, 475 F. App'x at 115 (dismissing complaint regarding "0g Trans Fat" claim notwithstanding "false or misleading" language of Section 101.13(i)(3)); *Yumul v. Smart Balance, Inc.*, 2011 U.S. Dist. LEXIS 109952, at \*32-33 (C.D. Cal. Mar. 14, 2011) (holding that where challenged terms "are either expressly defined or permitted under federal regulations, the Court must reject [the] argument that nutrient content claims using those same terms in a regulation-compliant manner are nonetheless 'false and misleading' and beyond the NLEA's express preemption provision"); *Red*, 2010 U.S. Dist. LEXIS 115238, at \*15 (claim preempted even though "[Section] 101.13(i)(3) prohibit[s] labels from . . . characterizing

DEFENDANT'S REPLY MEMORANDUM
ISO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

nutrient levels in a 'false or misleading' way").

The result here can be no different. Plaintiff's assertion that these precedents are distinguishable because the provisions at issue "d[id] not include an express requirement of compliance with § 343(a)" or its prohibition of "false or misleading" statements (Pl. Opp. 14) is incorrect: *all* of them did. And the cases Plaintiff relies upon are inapposite because they involved allegedly misleading claims *not* directly governed by specific FDCA provisions. In *Zupnik v. Tropicana Products*, 2010 U.S. Dist. LEXIS 142060, at *6 (C.D. Cal. Feb. 1, 2010), for example, the court held that Section 343(a) allows plaintiffs to target "specific false or misleading labels" where FDA has not "promulgated regulations that address the specific false or misleading aspect of the particular label." Similarly, in *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016), the Ninth Circuit concluded that the plaintiff's claim was not preempted because it did not seek to force the defendant to "modify or enhance any aspect of its . . . labels that [we]re required by federal law." *Id.* (internal quotation marks omitted). *See also Fagan v. Neutrogena Corp.*, 2014 U.S. Dist. LEXIS 2795, at *2-3 (C.D. Cal. Jan. 8, 2014) (claims regarding "natural" sunscreen could be challenged because plaintiff's complaint did not seek to "add to[] federal requirements") (internal quotation marks omitted); *Zeisel v. Diamond Foods, Inc.*, 2010 U.S. Dist. LEXIS 141941, at *11 (N.D. Cal. Sept. 3, 2010) (claims regarding the health effects of omega-3 fatty acids could be challenged where no FDCA provisions specifically governed them); *Yeldo v. MusclePharm Corp.*, 2017 U.S. Dist. LEXIS 189605 (E.D. Mich. Nov. 16, 2017) (same result for claims about the effects of a dietary supplement on muscle mass). Here, by contrast, there *are* specific FDCA provisions that address the disputed label claim, and Plaintiff *is* seeking to "modify and add to" those requirements. Her claims are thus preempted.[1]

---

[1] Plaintiff cannot use Section 1.21(a)—another general prohibition on omission of "material" facts—to circumvent the preemptive effect of Section 343(r)(2)(D). Plaintiff addresses this in cursory fashion in her opposition, purporting to distinguish the case Coca-Cola relied upon on the basis that there, "FDA regulations expressly allow[ed]" the disputed claim to appear without the requested disclosure. *See Gustavson v. Wrigley Sales Co.*, 2014 U.S. Dist. LEXIS 1693, at *30 (N.D. Cal. Jan. 7, 2014). That, however, is just the point: here too, Section 343(r) "expressly allow[s]" the disputed brand name without additional disclosures, and Plaintiff cannot use state law to impose any "non-identical" requirements on the use of the name.

DEFENDANT'S REPLY MEMORANDUM
ISO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

### D. Coca-Cola's Interpretation Does Not Render Section 343(r)(2)(D)'s Cross-Reference to Section 343(a) Superfluous

Plaintiff argues that her reading of Section 343(r)(2)(D) "gives effect" to the provision's cross-reference to Section 343(a), while Coca-Cola's construction does not. (Pl. Opp. 14) That is hardly a fair description of each party's position.

Plaintiff's proffered interpretation does not merely "give effect" to Section 343(r)(2)(D)'s "false or misleading" cross-reference; it exalts it over every other word in the statute. By Plaintiff's reckoning, the fact that Coca-Cola was using the brand name Diet Coke prior to October 1989 in conformity with the then-current definition of the word "diet" is of no moment whatsoever, and gives Coca-Cola no right to persist in the term's use. But that ignores what the statute says. Congress expressly provided that, in these precise circumstances, "diet" may continue to be used, and it gave that pronouncement preemptive force. The "false or misleading" qualifier is not a basis to read those requirements out of the statute.

Coca-Cola, by contrast, has provided the Court with a cogent explanation for the presence of the cross-reference, along with a proffered construction that gives effect to the entire text of Section 343(r)(2)(D). The statute presumptively authorizes use of the word "diet" so long as it appeared in a soft drink's brand name prior to October 1989 and that use "was in conformity" with the regulatory definition of "diet" at that time. 21 U.S.C. § 343(r)(2)(D). By noting that such use remains "subject to" Section 343(a), Congress made clear that manufacturers cannot use their "grandfathered" status to label their soft drinks "diet" if they later reformulate and increase the calorie content of the products so-labeled. In other words, as Coca-Cola reads the statute, the "false or misleading" proviso qualifies the statute's enumerated requirements. As Plaintiff reads it, the proviso renders every one of these requirements meaningless.[2]

---

[2] Plaintiff's protestation that Coca-Cola's reading is "not supported by the legislative record" is unavailing since, as she acknowledges elsewhere in her brief, there *is* no legislative record concerning Section 343(r)(2)(D). (Pl. Opp. 7 n.2)

Moreover, if Plaintiff were correct about the import of the "false or misleading" qualifier, then not only Section 343(r)(2)(D), but many other specific FDCA requirements, would be stripped of their preemptive force. The statute and its implementing regulations are replete with cross-references to Section 343(a)'s general prohibition on "false or misleading" claims, in circumstances where (as here) that prohibition would apply whether the cross-reference were present or not. *See*, *e.g.*, 21 U.S.C. §§ 343(r)(2)(C), 343(r)(2)(G), 343(r)(3)(C) (establishing discrete requirements for various categories of nutrient content claims, subject to the proviso that all claims must comply with Section 343(a)); 21 C.F.R. §§ 101.13(i)(3) (same for express nutrient content claims); 101.3(e)(2)(ii) (same for statements of identity); 101.61(c)(3) (same for claims that infant food is "unsalted"); 133.190 (same for spiced cheese labels). Such a cross-reference may be included to add clarity to the statutory or regulatory provision; to serve as a reminder that the general prohibition is ever-present; or, as is the case here, to prevent abuse of a statutory right. But as this Court made clear in *Guttmann* and *Backus*, a cross-reference ***does not*** vitiate the preemptive effect of the provision that governs the claim.

Further, contrary to Plaintiff's argument, FDA's interpretation of its regulations implementing Section 343(r) is consistent with this Court's decision in *Guttman* and *Backus*. When FDA revised its regulations to implement section 343(r), it explained how Section 343(a) would apply to claims governed by Section 343(r). Plaintiff misleadingly cites only the first sentence of this explanation—where FDA stated that 343(a) permits it to "take action against any false or misleading use of a term such as 'diet'" (Pl. Opp. 8, citing 58 Fed. Reg. 2,427, 2,428 (Jan. 6, 2933))—and ignores the following sentences, which explain by example what a "false or misleading" use would be. FDA explained that while its regulations permit the term "diet" to be used on the label of formulated meal replacements, it would not permit a product that is not a formulated meal replacement to be labeled as such "***to avoid the requirement that foods using the label term 'diet' either be low in calories, reduced in calories, or bear another comparative claim***," because in that case the product "is falsely represented as a formulated meal replacement." *Id*. Here, in contrast, there can be no argument that Coca-Cola is attempting "to avoid the requirement that

9     DEFENDANT'S REPLY MEMORANDUM
ISO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

foods using the label term 'diet' . . . be low in calories." It is undisputed that Diet Coke *is* a low calorie soft drink. By definition, Coca-Cola's use of the term "diet" to identify its low calorie product is not false or misleading.

Plaintiff's attempt to use the cross-reference in Section 343(r)(2)(D) to reach a different result is contrary not only to the plain text of the statute, but its fundamental purpose. For decades, manufacturers nationwide have used the term "diet" on soft drinks in a manner consistent with the longstanding definition of that term (*i.e.*, low or reduced calorie). That is how the statute is supposed to work: by mandating national uniform labeling and preempting non-identical state-law requirements, the FDCA requires "disclosure of all valid and relevant information to the consumer … [while] permit[ting] [manufacturers] to conduct their business of food distribution in an efficient and cost-effective manner." *See* 136 Cong. Rec. H5836-01 (July 30, 1990) (statement of Rep. Madigan). If Plaintiff believes that the existing requirements for "diet" claims have been rendered obsolete by the current clinical literature on weight management, her remedy is to lobby Congress to modify them. It is not to use state law to impose alternative requirements under the guise of the general prohibition on "false or misleading" claims.

### E. Neither the "Presumption Against Preemption" Nor the Parallel Requirements of the Sherman Law Can Save Plaintiff's Claims

The general "presumption against preemption," which Plaintiff trumpets at great length in her opposition, has no application where, as here, a statute contains an express-preemption provision that admits of no ambiguity. *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016) (noting that where a "statute contains an express pre-emption clause, we do not invoke any presumption against pre-emption but instead focus on the plain wording of the statute, which necessarily contains the best evidence of Congress' preemptive intent.") (internal quotation marks omitted). The FDCA provides that no state may impose any "requirement respecting any claim of the type described in [Section 343(r)] made in the label or labeling of food that is ***not identical to*** the requirements of [Section 343(r)]." 21 U.S.C. § 343-1(a)(5) (emphasis added). FDA has further clarified through regulation that the term "not identical to" includes any state-law requirements that

"are not imposed by" or "differ from" the requirements of federal law. 21 C.F.R. § 100.1(c)(4).

Application of this preemption regime to the facts of this case is straightforward. Plaintiff challenges Coca-Cola's use of the word "diet" in the brand name Diet Coke. As set forth above, the requirements for use of that term are set out in Section 343(r)(2)(D), which fall within Section 343(r), an FDCA provision with preemptive force. Plaintiff seeks to use state law to impose additional requirements for the term, namely, that the product be shown to have a positive impact on weight loss or weight management. No matter how "narrowly" the Court reads the preemption statute, this is exactly the type of "non-identical" state-law requirement Section 343-1 prohibits.[3]

Plaintiff also argues that, because California's Sherman Food, Drug and Cosmetic Law adopts all federal food-labeling requirements as the law of that State, she is effectively "only seeking to impose state law requirements that are identical to federal regulations." (Pl. Opp. 12 (quoting *Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033, 1043 (N.D. Cal. June 28, 2013)) To the contrary, if the Court were to apply California law in the manner Plaintiff urges, it would impose requirements on use of the term "diet" that are plainly ***not identical*** to those imposed by federal law. That California has adopted a food-labeling law with parallel requirements to the FDCA has no bearing on the issue; if it did, California plaintiffs could always escape FDCA preemption by purporting to bring their claims under those parallel provisions. Instead, courts routinely reject that specious logic. *See Guttmann,* 2015 U.S. Dist. LEXIS 92756, at *7 (finding state-law claims preempted where they sought to impose requirements beyond those contained in Section 343(r) and its implementing regulations); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1121 (N.D. Cal. 2010)

---

[3] Courts routinely note that a defendant bears the burden of establishing preemption, only to find that plaintiff's claims are expressly preempted by the plain language of Section 343-1. *See, e.g., In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, 2017 U.S. Dist. LEXIS 174394, at *10, *17 (C. D. Cal. Oct. 10, 2017) (noting that "parties seeking to invalidate a state law based on preemption bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law," but finding plaintiff's claims expressly preempted because plaintiff sought "to enjoin exactly what federal law expressly permits."); *Samet v. P&G*, 2013 U.S. Dist. LEXIS 86432, at *16, *21 (N.D. Cal. June 18, 2013) (despite the "presumption against preemption," the "requirement of Plaintiffs' claim goes beyond what is required by the FDCA and therefore is expressly preempted.").

(plaintiff's claim under Sherman Law preempted where it sought to impose additional conditions on the use of a food-labeling term beyond those set forth in Section 343(r)). This Court should do the same here.

## II. Plaintiff's Claims Are Barred by California's Safe Harbor Doctrine

In addition to being expressly preempted, Plaintiff's claims are barred by the safe harbor doctrine, which provides that when Congress or the California legislature "has permitted certain conduct or considered a situation and concluded no action should lie," that conduct cannot give rise to a consumer protection claim. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999). Here, the "certain conduct" at issue—the use of "diet" on a low calorie soft drink such as Diet Coke—has been expressly permitted by Congress in Section 343(r)(2)(D) (and FDA in implementing regulations), and by the California legislature in the Sherman Law, which adopts the provisions of the FDCA as state law. *See* Cal. Health & Safety Code §§ 109875 *et seq.* California law thus bars Plaintiff's claims for the same reasons the FDCA's express-preemption clause does. Plaintiff concedes as much in her opposition, referring to the safe-harbor and preemption analyses as "duplicative" of one another. (Pl. Opp. 16) The safe harbor doctrine provides an independent basis to dismiss the First Amended Complaint.

## III. Plaintiff Has Not Stated A Claim for Breach of the Implied Warranty of Merchantability

As set forth in Coca-Cola's opening brief, this Court has held that to "breach the implied warranty of merchantability, a product must lack 'even the most basic degree of fitness for ordinary use." *Guttmann v. Nissin Foods, Inc.*, 2015 U.S. Dist. LEXIS 108217, at \*6 (N.D. Cal. Aug. 14, 2015) (Alsup, J.) (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (Cal. Ct. App. 2003)). The FAC contains no such allegation. Having no response to this pleading defect, Plaintiff instead attempts to premise her implied warranty claim on the theory that Coca-Cola failed to conform to the "promises or affirmations of fact made on the container or label" of Diet Coke.

The "promise" or "affirmation of fact" that Plaintiff contends was breached, however, is the purported promise that "Diet Coke would assist in weight loss or healthy weight management, and

12　DEFENDANT'S REPLY MEMORANDUM
ISO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

would not contribute to weight gain." FAC ¶ 90. In fact, no such promise can be found anywhere on Diet Coke's label, and as this Court has recognized, the implied warranty of merchantability "does not impose a general requirement that goods precisely fulfill the expectations of the buyer." *Marcus v. Apple, Inc.*, 2015 U.S. Dist. LEXIS 2140, at *24 (N.D. Cal. Jan. 8, 2015) (Alsup, *J.*). Yet that is exactly the requirement that Plaintiff seeks to impose here. Because Plaintiff has failed to allege that Diet Coke is unfit for its ordinary use, or that it failed to conform to a promise or warranty that actually appeared on the label, this claim must be dismissed.

**CONCLUSION**

The term "diet" on Diet Coke's label is specifically authorized by Section 343(r)(2)(D) and its corresponding regulations, which fall squarely within the express-preemption provision of the FDCA. Plaintiff does not challenge Diet Coke's compliance with the requirements delineated by Section 343(r)—she asks this Court to ignore them and determine whether the brand name is, by some other standard, "false or misleading." As numerous courts have held, private plaintiffs cannot escape FDCA preemption in this manner. Plaintiff's First Amended Complaint should be dismissed in its entirety without leave to amend.

DEFENDANT'S REPLY MEMORANDUM
ISO MOTION TO DISMISS FIRST
AMENDED COMPLAINT

Dated: February 9, 2018

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP
Steven A. Zalesin (Admitted *Pro Hac Vice*)
sazalesin@pbwt.com
Catherine A. Williams (Admitted *Pro Hac Vice*)
cawilliams@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Telephone (212) 336-2110
Facsimile (212) 336-2111

SHOOK, HARDY & BACON LLP
Tammy B. Webb (SBN 227593)
tbwebb@shb.com
One Montgomery St., Suite 2700
San Francisco, California 94104
Telephone (415) 544-1900
Facsimile (415) 391-0281

By: /s/ Steven A. Zalesin
      Steven A. Zalesin

Attorneys for The Coca-Cola Company