1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7

8                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   SHANA BECERRA,
     individually and on behalf of a class
11   of similarly situated persons,                     No. C 17-05916 WHA

12              Plaintiff,

13      v.                                               **ORDER GRANTING
                                                         MOTION TO DISMISS**
14   THE COCA-COLA COMPANY,

15              Defendant.

16   _____/

17

18                                     **INTRODUCTION**

19          In this putative class action, defendant soft drink manufacturer moves to dismiss the

20   complaint pursuant to FRCP 12(b)(6).  Its preemption argument is rejected, but for other

21   reasons stated herein, its motion is **GRANTED**.

22                                      **STATEMENT**

23          Plaintiff Shana Becerra brings this putative class action against defendant

24   The Coca-Cola Company over its labeling of "Diet Coke."  Coca-Cola first introduced

25   Diet Coke in 1982, as a sugar- and calorie-free version of its flag-ship cola.

26          The following facts are taken from the amended complaint.  For many years, Becerra

27   purchased and consumed Diet Coke in part because she believed, based on Coca-Cola's

28   advertising of the product as "diet," that it would contribute to weight loss or healthy weight

     management.  But for this belief, Becerra claims she would not have purchased Diet Coke.

United States District Court
For the Northern District of California

The science, she alleges, now shows Diet Coke consumption actually leads to the exact opposite — weight gain. Becerra's complaint cites numerous scientific studies purportedly suggesting that nonnutritive sweeteners, like those used in Diet Coke, do not assist in weight loss or healthy weight management, because nonnutritive sweeteners like aspartame interfere with the body's ability to properly metabolize calories, leading to weight gain and increased risk of metabolic disease, diabetes, and cardiovascular disease.

In October 2017, Becerra commenced this action against Coca-Cola seeking to represent a state-wide class of persons in California who purchased Diet Coke in cans or bottles on or after October 26, 2013 for personal or household use. Becerra asserts claims for violations of the California False Advertising Law, the California Consumers Legal Remedies Act, the California Unfair Competition Law, for breach of express warranty, and for breach of implied warranty.

Coca-Cola now moves to dismiss Becerra's complaint pursuant to FRCP 12(b)(6). This order follows full briefing and oral argument.

## ANALYSIS

Coca-Cola argues federal law preempts all of Becerra's claims, and that even if not preempted, Becerra's claims are barred by California's safe harbor rule. This order also addresses the pleading standard under FRCP 9(b).

**1. EXPRESS PREEMPTION AND SAFE HARBOR.**

In 1990, Congress passed the Nutrition Labeling and Education Act, which amended the Food, Drug and Cosmetic Act, and established uniform food labeling requirements to address the need for "consistent, enforceable rules pertaining to the claims that may be made with respect to the benefits of nutrients in foods." Pub. L. No. 101-535, 104 Stat. 2353 (1990); H.R. Rep. 101-538, at 8 (1990). In order to achieve its goal of uniformity, the NLEA included an express preemption provision that no state may directly or indirectly establish any requirement for the labeling of food that is "not identical to" certain federal requirements. 21 U.S.C. § 343-1. A state regulation is "not identical to" a federal regulation if it imposes

1    any obligation that differs from those specifically imposed by or contained in the applicable

2    provision (including any implementing regulation).  21 C.F.R. § 100.1(c)(4)(ii).

3        One provision with such preemptive effect is Section 343®, which describes when

4    a label containing nutrition content and health-related claims will be deemed misbranded.

5    Section 343(r)(2)(D) provides an exception for the use of the term "diet" in soft drink brand

6    names.  Such use is not subject to Section 343(r)(2) if:

7            (i) such claim is contained in the brand name of such soft drink,
             (ii) such brand name was in use on such soft drink before
8            October 25, 1989, and (iii) the use of the term "diet" was in
             conformity with section 105.66 of title 21 of the Code of Federal
9            Regulations.  Such claim is subject to paragraph (a).

10       Paragraph (a) refers to Section 343(a), which, in turn, states that a food is misbranded

11   if "its labeling is false or misleading in any particular."  This general prohibition against false

12   and misleading labels does not fall within the scope of Section 343-1, and as such, states are

13   free to regulate where, as here, California statutes impose requirements identical to those of

14   Section 343(a).  *See, e.g.*, Cal. Health and Safety Code § 110660 ("Any food is misbranded if its

15   labeling is false or misleading in any particular"); *Farm Raised Salmon Cases*, 42 Cal. 4th 1077,

16   1086 ("under FDA regulations, if the State requirement is identical to Federal law, there is no

17   issue of preemption").

18       The implementing federal regulations also explicitly provide that the use of the term

19   cannot be false or misleading.  "A soft drink that used the term 'diet' as part of its brand

20   name . . . may continue to use that term as part of its brand name, provided that its use of

21   the term is not false or misleading under section [343(a)]."  21 C.F.R. § 101.13(q)(2); *See also*

22   21 C.F.R. § 105.66(e)(1) ("a food may be labeled with terms such as 'diet' . . . only if the claim

23   is not false and misleading").

24       The above-quoted conditions of Section 343(r)(2)(D), Coca-Cola asserts, are

25   "requirements" for the use of the term "diet," and thus Section 343-1(a) preempts any state law

26   that imposes different requirements.  This is not how the statute reads.  Section 343(r)(2)(D)

27   does not *positively authorize use* of the term "diet" if its requirements are met.  Rather,

28

United States District Court

For the Northern District of California

1  Section 343(r)(2)(D) states only that *if* its conditions are met, *Section 343® does not apply* and

2  the use *is subject to Section 343(a).*

3      Because Becerra seeks to invoke state statutes that are not expressly preempted by

4  Section 343-1 and that impose requirements identical to the federal statute, Becerra's claims

5  are not preempted by the FDCA.

6      Coca-Cola argues that its use of the term "diet" complied with federal regulations, and

7  that an order deeming such use false or misleading would indirectly impose a requirement not

8  identical to the FDCA.  Coca-Cola cites this Court's decision in *Guttmann v. Nissin Foods*

9  *(U.S.A.) Co., Inc.*, 2015 WL 4309427 (N.D. Cal. June 15, 2015).  In *Guttmann*, the plaintiff

10  claimed that the label "0g Trans Fat" was false and misleading because the product in question

11  did, in fact, contain trace amounts of trans fat.  The order on the motion to dismiss held that

12  the plaintiff's claims were nevertheless preempted because the defendant's use of the phrase

13  "0g Trans Fat" was explicitly required by a federal regulation.  That regulation stated, in relevant

14  part, "[i]f the serving contains less than 0.5 gram, the content, when declared, shall be expressed

15  as zero." 21 C.F.R. § 101.9(c)(2)(ii) (2015).  Accordingly, even though the product had trace

16  amounts of trans fat, and the label statement was literally false, for a court to have held that the

17  label was "false or misleading" would have imposed a requirement different than that of the

18  FDCA.

19      Coca-Cola argues Section 105.66 of Title 21 of the Code of Federal Regulations is

20  comparable to the regulation in *Guttmann*.  Section 105.66 states:

21          (e) *Label terms suggesting usefulness as low calorie or reduced*
        *calorie foods.*

22

23          (1) Except as provided . . . in § 101.13(q)(2) of this chapter for soft
        drinks, a food may be labeled with terms such as "diet" . . . only if
        the claim is not false and misleading, and the food is labeled "low

24          calorie" or "reduced calorie" or bears another comparative calorie
        claim in compliance with part 101 of this chapter and this section.

25  Not only is this provision also subject to the now familiar false and misleading prohibition, but

26  it also imposes *no requirement* to use the term "diet."  The incompatibility in *Guttmann* was the

27  federal requirement on defendant to display the amount of trans fat as "0g" on one hand, and the

28  claimed requirement to display it as "trace amounts" on the other hand.  Here, there is no such

United States District Court

For the Northern District of California

1  conflict.  If "diet" is determined to be false and misleading, unlike in *Guttmann*, Coca-Cola

2  would not be obligated by any federal statute to continue to use the term.

3      Coca-Cola argues, in the alternative, that California's safe harbor rule also bars

4  Becerra's consumer protection claims.  The safe harbor rule applies where a plaintiff pursues

5  a consumer protection claim arising from conduct that is explicitly authorized by a statute.

6  Because the FDCA does not positively authorize use of the term "diet" in a false or misleading

7  manner, as discussed above, Coca-Cola's safe-harbor defense fails as well.

8      This order now turns to the sufficiency of Becerra's complaint under FRCP 9(b).

9      **2.    FRCP 9(b).**

10     Fraud claims are subject to a higher standard and must be pled with particularity.

11 FRCP 9(b).  State law consumer protection claims that sound in fraud must therefore be

12 "accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v.*

13 *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

14         **A.    Statutory Claims.**

15     Claims under California consumer protection statutes are governed by the "reasonable

16 consumer" standard.  Under this standard, a plaintiff must show that members of the public

17 are likely to be deceived. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

18 This requires more than a mere possibility that the product "might conceivably be

19 misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh,*

20 *Inc.*, 838 F.3d 958, 965 (9th Cir. 2016).

21     Here, Becerra has not met this requirement.  Becerra does not argue that Coca-Cola has

22 made *any* affirmative statements or representations that Diet Coke will cause weight loss or

23 healthy weight management.  Rather, Becerra argues only that "'diet' inherently and necessarily

24 implies it will assist in weight loss" (First Amd. Compl. ¶ 14).

25     Contrary to Becerra, a reasonable consumer would simply not look at the brand name

26 Diet Coke and assume that consuming it, absent any lifestyle change, would lead to weight loss.

27 In supermarkets, Diet Coke is displayed next to regular soft drinks and is not sold in the

28 health-food section.  Reasonable consumers would understand that Diet Coke merely deletes

United States District Court

For the Northern District of California

the calories usually present in regular Coke, and that the caloric reduction will lead to weight loss only as part of an overall sensible diet and exercise regimen dependent on individual metabolism.

Becerra further fails to allege facts showing how a reasonable consumer would infer from the example Diet Coke advertisements that consumption would lead to weight loss. Reasonable consumers understand that advertising will feature healthy and attractive consumers enjoying the subject products and will not star the unhealthy and unfit. Such advertising cannot be said to imply that a product will cause weight loss without regard to exercise and nutrition.

The complaint relies heavily on thirteen studies that are equivocal as to whether diet soda causes weight gain. Read in the light most favorable to Becerra, these studies all acknowledge that the question of *causation*, rather than *correlation*, remains undetermined. Indeed, one study referred to by Becerra concludes by suggesting the correlation is due to the behavior of consumers, rather than the effects of nonnutritive sweeteners: "Taken together, the evidence summarized by us and others suggests that if [nonnutritive sweeteners] are used as substitutes for higher energy yielding sweeteners, they have the potential to aid in weight management, but whether they will be used in this way is uncertain." Richard D. Mattes & Barry M. Popkin, *Nonnutritive Sweetener Consumption in Humans: Effects on Appetite and Food Intake and their Putative Mechanisms*, 89 AM. J. CLINICAL NUTRITION 1, 10 (2009).[*]

In order for Becerra succeed on her claims, she must prove that Diet Coke *causes* weight gain. Becerra's studies may show a strong correlation between artificial sweeteners and weight gain, and they may raise legitimate concerns over the health value of replacing sweetened beverages with artificially sweetened ones. But Becerra's studies do not show that Diet Coke causes weight gain.

---

[*] *See also* Rebecca J. Brown et al., *Artificial Sweeteners: A Systematic Review of Metabolic Effects in Youth*, 5 INT'L J. OF PEDIATRIC OBESITY 305, 310 (2010) ("causality is far from established with regard to artificial sweetener use and weight gain in children"); Mengna Huang et al., *Artificially Sweetened Beverages, Sugar-Sweetened Beverages, Plain Water, and Incident Diabetes Mellitus in Postmenopausal Women*, 106 AM. J. CLINICAL NUTRITION 614, 614 (2017) ("caution should be taken in interpreting these results as causal because both residual confounding and reverse causation could explain these results").

**United States District Court**
For the Northern District of California

1   In order to overcome the otherwise sensible view of reasonable consumers that

2   Diet Coke consumption alone will not lead to weight loss, the complaint would need to cite far

3   more powerful evidence than is now provided to make a claim of fraud plausible.  This order

4   holds that Becerra's complaint fails to allege facts sufficient to demonstrate that Coca-Cola's

5   advertisements are false and misleading.  With a conclusory wave of counsel's hand, Becerra

6   has overstated the actual science set forth in the citations.  Becerra's consumer protection

7   statutory claims are accordingly **DISMISSED**.

8         **B.**      **Breach of Warranty.**

9   Becerra's claims of breach of express and implied warranty of merchantability must fail

10  for the same reasons stated above.  The complaint fails to sufficiently allege Coca-Cola

11  misrepresented to consumers that Diet Coke would aid in weight loss or healthy weight

12  management without regard to exercise and nutrition.  Accordingly, Becerra's claims for breach

13  of express and implied warranty are also **DISMISSED**.

14                 **CONCLUSION**

15  Coca-Cola's motion to dismiss is **GRANTED**.  Plaintiff may seek leave to amend the

16  complaint and will have until **MARCH 22, 2018**, within which to file a motion, noticed on the

17  normal 35-day track, for leave to file an amended complaint.  The motion must include a

18  proposed amended complaint (and a redlined copy) and must explain why the new pleading

19  overcomes all deficiencies pointed out, including those this order need not reach.  Plaintiff must

20  plead her best case.

21

22      **IT IS SO ORDERED**

23

24  Dated:  February 27, 2018.

25                               WILLIAM ALSUP
                             UNITED STATES DISTRICT JUDGE

26

27

28